FREDERICK A. PATMON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patmon v. Commissioner
Docket No. 11816-89
United States Tax Court
T.C. Memo 1991-112; 1991 Tax Ct. Memo LEXIS 136; 61 T.C.M. (CCH) 2152; T.C.M. (RIA) 91112; March 14, 1991, Filed *136 Decision will be entered for the respondent. Hallison H. Young, for the petitioner. Elias T. Majoros, for the respondent. PARKER, Judge. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in, and additions to, petitioner's 1978 Federal income tax as follows: Additions to Tax
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
$ 26,005.98
$ 6,501.50
$ 1,300.30
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year before the Court, and all rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioner failed to report income of $ 9,221.80 in 1978; (2) Whether petitioner is entitled to a Schedule C loss of ($ 37,700); (3) Whether petitioner is entitled to an investment tax credit of $ 25,082; (4) Whether petitioner is entitled to a net partnership loss of ($ 3,266); (5) Whether petitioner is entitled to Schedule A itemized deductions in the amount of $ 3,020 and to two dependency exemptions; (6) Whether petitioner is liable for self-employment tax on the alleged unreported income of $ 9,221.80; *137 and (7) Whether petitioner is liable for additions to tax for late filing of his return under section 6651(a)(1) and for negligence under section 6653(a). FINDINGS OF FACT There is no stipulation of facts in this case. Petitioner Frederick A. Patmon (hereinafter petitioner) did not appear or testify at the trial. At the time the petition was filed in this case, petitioner resided in Detroit, Michigan. Petitioner is an attorney. Petitioner elected and adopted the calendar year as his taxable year for the purposes of computing his taxable income and making his return for 1978. Petitioner and his wife obtained an extension of time to and including October 15, 1979, within which to file their 1978 Federal income tax. On April 18, 1980, petitioner filed his U.S. Individual Income Tax Return (Form 1040) for 1978. He claimed a filing status of "Married filing separate return" and claimed dependency exemptions for two children. On Schedule A, he claimed itemized deductions of $ 3,020, consisting of $ 200 for taxes and $ 2,820 for interest. There is no evidence in the record to substantiate the amount or to establish the deductibility of the Schedule A itemized deductions. There *138 is no evidence in the record to establish that petitioner is entitled to the dependency exemptions for two children. On line 8 of Form 1040, petitioner listed wages and salary of $ 43,225, but this figure is taken from Schedule B, Part 1, Interest Income, which lists two small items of interest income from life insurance companies and $ 43,145 from Patmon, Young & Kirk, P.C., petitioner's law firm. Patmon, Young & Kirk, P.C. had, among its clients, one Brian Holland and one Edward J. Holland, Jr. Apparently, the Hollands periodically received checks from Broadcast Music, Inc. (BMI), in New York City. These BMI checks were deposited into the law firm's client trust account. The record does not indicate whether there was a separate trust account for each client, for each partner in the firm, or exactly how client trust accounts were set up. The law firm apparently disbursed portions of these BMI check amounts as directed by the Hollands, deducted various fees and expenses from those check amounts, and remitted the balances to the Hollands or as otherwise directed by the Hollands. During 1978 petitioner, as the maker, drew seven checks on the Frederick Patmon Trustee Account with *139 the Bank of the Commonwealth in Detroit, Michigan. These trustee account checks were made payable to Frederick A. Patmon, Frederick Patmon, or cash as follows: Date
Check Number
Amount
3/14/78
2439
$ 4,000.00
4/18/78
2445
200.00
5/26/78
2448
500.00
9/12/78
2472
2,721.80
10/17/78
2485
300.00
11/21/78
2490
1,000.00
11/25/78
2492
500.00
Total:
$ 9,221.80
With one possible exception, petitioner endorsed and cashed all of these checks. [1] There is some evidence in the record to indicate that, on at least two occasions (in June and September 1978), petitioner made cash disbursements of $ 250 on behalf of each of the Hollands. However, there is no evidence in the record to connect these four cash payments of $ 250 each to the above-listed seven checks drawn on the Frederick Patmon Trustee Account, made payable to petitioner, or cash, and cashed by him. There is no evidence in the record as to petitioner's disposition of the $ 9,221.80 cash proceeds he received from these trustee account checks. There is no evidence that he used the $ 9,221.80 on behalf of any client or for any other purpose that would establish that it was not *140 income to him. Attached to petitioner's 1978 tax return was a Schedule C, Profit or (Loss) From Business or Profession, listing a business activity of manufacturing and marketing and a product identified as "Masters and Records." No gross receipts or sales from this activity were reported. However, petitioner claimed a deduction for depreciation in the amount of $ 37,700, and thus a net Schedule C loss of ($ 37,700). There is no evidence in the record in regard to this Schedule *141 C activity. [2] There is no evidence to support the claimed depreciation deduction of $ 37,700. *142 On a Schedule E, Supplemental Income Schedule, attached to his 1978 return, petitioner claimed a net partnership loss of ($ 3,266). An attached schedule lists the following items comprising that net partnership loss: Second Avenue Ltd. Div.
($ 3,450)
OAR Leasing
(  1,547)
Thompson Towers
2,500 P Y Leasing
(    769)
Total:
($ 3,266)
There is no evidence in the record to substantiate the amount or to support the deductibility of the claimed net partnership loss. On a Form 3468, Computation of Investment Credit, attached to his 1978 return, petitioner claimed a tentative investment credit of $ 25,082. However, no investment credit is claimed on line 41 of Form 1040, probably because petitioner had already reduced his taxes to zero as a result of the claimed deductions and losses discussed above. In any event, there is no evidence to substantiate the amount or to establish the allowability of any investment credit. Respondent timely issued a statutory notice of deficiency on March 3, 1989. [3] Respondent increased petitioner's income by the amount of the trustee account checks ($ 9,221.80) that he cashed and also determined that petitioner was liable for *143 additional self-employment tax on that income. Respondent disallowed petitioner's Schedule A deductions, dependency exemptions, Schedule C loss, net partnership loss, and investment tax credit. Respondent also determined additions to tax for late filing under section 6651(a)(1) and for negligence under section 6653(a). *144 OPINION The issues in this case are inherently factual and petitioner bears the burden of proof. ; Rule 142(a). The record is essentially devoid of evidence, and petitioner has failed to carry his burden of proof. [4]
As to the item of unreported income, section 61(a) provides that gross income means "all income from whatever source derived." Respondent established that petitioner drew seven checks on the Frederick Patmon Trustee Account that *145 petitioner endorsed and cashed. That puts the cash into petitioner's hands, a clear accretion to wealth and hence income to him. ; cf. . Petitioner has failed to show that he used that cash for his clients or otherwise to establish that it was not income to him. An attorney's handling and disbursement of a client's funds are matters peculiarly within the control and knowledge of that attorney. Therefore, it is not unreasonable to expect the attorney to be able to account for such funds. Here there were just seven specific checks at issue. Those check numbers, dates, amounts, and endorsements were set out in detail in the deficiency notice dated March 3, 1989. The Notice Setting Case for Trial was served on December 6, 1989, for trial during the trial session of the Tax Court in Detroit, Michigan, commencing May 7, 1990. The case was reached for trial on May 10, 1990. Petitioner did not appear or testify at the trial, and his counsel's complaints as to the difficulties in documenting these transactions are not well taken. This *146 is an instance where the information is peculiarly within the knowledge and control of petitioner. His failure to come forward with the evidence (either documentary or testimonial) warrants an inference that the evidence, if produced, would not support his contention. , affd. . Accordingly, we conclude that petitioner did receive unreported income of $ 9,221.80 and that he is liable for self-employment tax on that unreported income. Petitioner's 1978 tax return was filed late. He has the burden to establish that his failure timely to file was "due to reasonable cause and not due to willful neglect." Sec. 6651(a)(1); . He has failed to carry his burden of proof, and we must sustain the late filing addition. Petitioner also has the burden to establish that his underpayment of tax was not "due to negligence or intentional disregard of rules and regulations." Sec. 6653(a); . He has not sustained his burden. To *147 reflect the above holdings, Decision will be entered for the respondent. Footnotes
1. It is not clear whether or not petitioner endorsed check 2445 in the amount of $ 200. These check numbers, dates, and amounts were listed in the statutory notice of deficiency with the notation that petitioner endorsed all of the checks except check 2445 which, the deficiency notice recited, bore a stamped endorsement in the name of Frederick Patmon. However, the photocopy in evidence is so smudged the Court cannot discern whether or not a stamped endorsement is present. It is clear, however, that petitioner cashed all seven checks.↩
2. In disallowing the deduction for the "Master Recording activity," the deficiency notice lists a long litany of reasons, any one of which would constitute a sufficient basis for disallowance. These various grounds for disallowance include whether or not the transaction occurred in fact or substance, whether there was a profit objective, and whether there was any economic substance to the transaction. Since the record is totally devoid of any evidence about the master recording activity, we need not discuss any of these grounds for disallowance. In his post-trial brief, petitioner for the first time tries to rely on documents and evidence in other cases in this Court. The parties in this case did not agree to be bound by the outcome of these cases; petitioner did not offer these documents and evidence at the trial of this case; consequently, these materials are not part of the evidentiary record of this case, and will not be considered by the Court. Although the Court extended petitioner's time to file a reply brief to and including February 6, 1991, he did not file a reply brief.↩
3. In his post-trial brief, petitioner for the first time raises an issue as to the statute of limitations. The statute of limitations is an affirmative defense that must be specifically pleaded. Rule 39. Petitioner did not plead the statute of limitations in his petition or any other pleading in this case. Petitioner did not raise the statute of limitations issue in his Pre-Trial Memorandum or at the trial of this case. New issues cannot be raised for the first time in a post-trial brief. . See also , T.C.M. (RIA) P89480 at 2377.↩
4. In his petition, petitioner broadly asserted that the Commissioner's determination of tax and issuance of the deficiency notice "was malicious, arbitrary, capricious, illegal and computed without any factual or legal basis." He also contended that the Commissioner issued the deficiency notice "in retaliation" against petitioner for various actions and because "Petitioner exercised his rights guaranteed by the United States Constitution." Petitioner also failed to produce any evidence to support these charges.↩